IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CATO INSTITUTE, INC.,
        Plaintiff,              \*

v.                                 \*        Civil No. JFM-11-01418

CONTINENTAL CASUALTY CO., et al.,   \*
        Defendants.        \*

\*\*\*\*\*\*

MEMORANDUM

On March 25, 2011, Plaintiff Cato Institute, Inc. ("Cato") filed a Complaint in the Circuit Court for Montgomery County, Maryland, against Continental Casualty Company ("Continental") and AXIS Insurance Company ("AXIS") seeking $775,000.00 in damages and a declaration that the defendants were obligated to defend and indemnify Cato in a prior lawsuit. Pursuant to 28 U.S.C. § 1441, the defendants removed the case to federal court on May 24, 2011 on the basis of diversity jurisdiction. (ECF No. 1.) AXIS has filed a motion to dismiss.[1] The issues raised by the motion have been fully briefed, and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, I grant AXIS's motion.

**I. Background**

Cato's Complaint arises out of an action (the "underlying action") filed against Cato on June 18, 2009, by Ghaleb Mohammad Ishaq Hijazi d/b/a Lamp of Liberty ("Mr. Hijazi") in the United States District Court for the District of Columbia. (*See* Compl., Ex. C.) In his complaint (the "underlying complaint"), Mr. Hijazi alleged that his company, Lamp of Liberty,[2] a sole proprietorship registered in Jordan, had a business relationship with Cato from April 2006 to

---
[1] Continental has filed an answer.
[2] "Lamp of Liberty" is the English translation of the Arabic phrase "Misbah al Hurriyya." (Compl., Ex. C ¶ 2.)

1

October 2008 in which Mr. Hijazi, as an independent contractor, translated books and writings from English to Arabic and collaborated with Cato to disseminate information regarding public policy discourse throughout the Middle East. (*Id.*, Ex. C ¶¶ 10, 13, 16.) The underlying complaint further alleged that, after the business relationship ended, Tom G. Palmer, a Cato employee, gained unauthorized access to Lamp of Liberty's website and thereby obstructed Mr. Hijazi's business activities. (*See id.* ¶¶ 35-36.) Finally, Mr. Hijazi alleged that Cato misappropriated his professional contacts and impermissibly re-created his business model by transferring access to the Lamp of Liberty website to a third party. (*Id.*, Ex. C ¶¶ 20-27.) In total, there were nine counts upon which Mr. Hijazi sought relief, including allegations of unfair competition, trespass, tortious interference with business opportunity and contract, conversion, and misappropriation of trade secrets. (*See id.* ¶ 30.)

Shortly after Mr. Hijazi filed the underlying complaint, Cato contacted its insurers, Continental and AXIS, requesting defense and indemnification in the underlying action. (*See id.* ¶¶ 39, 53.) Continental and AXIS denied Cato's requests, contending that their respective insurance policies did not cover such a lawsuit. (*See id.* ¶¶ 39-41, 48, 53, 57.) Cato and Mr. Hijazi ultimately reached a settlement before trial, but Cato never received representation or indemnification from either insurance company. Consequently, Cato filed the present suit against Continental and AXIS on March 25, 2011, alleging breach of contract, duty to defend and duty to indemnify. (*Id.* ¶¶ 16-22.) On May 31, 2011, AXIS filed the motion to dismiss, which is now before this Court.

## II. Standard of Review

### A. Generally

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Affirmative Defenses

Courts generally consider policy exclusions as affirmative defenses. *See, e.g.*, *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1164 (4th Cir. 1982). While affirmative defenses may be reached by a motion to dismiss filed under Rule 12(b)(6), the Fourth Circuit has made clear that such a motion should be granted only in the rare circumstances where facts sufficient to rule on an

affirmative defense clearly appear on the face of the complaint. *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). Importantly, though, a movant cannot merely show that the elements of the defense appear on the face of the complaint, but must also "show that the plaintiff's potential rejoinder to the affirmative defense was foreclosed by the allegations in the complaint." *Id.* at 466. The preliminary question, therefore, is whether the AXIS policy coverage can be resolved at this early juncture based upon the facts alleged in the Complaint.

To determine whether an insurer has a duty to defend in Maryland, "a court simply compares the insurance policy with the complaint in the underlying action." *Nautilus Ins. Co. v. BSA Ltd. P'ship*, 602 F. Supp. 2d 641, 649 (D. Md. 2009). Attached to Cato's Complaint are both the underlying complaint and the AXIS insurance policy. (*See* Compl., Exs. B & C.) These documents are part of the Complaint and can be considered by this Court in deciding AXIS's motion to dismiss. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010) ("[A] Rule 12(b)(6) motion must be decided solely on the face of the complaint and any attachments that accompanied its filing."); *see also Demetry v. Lasko Prods.*, 284 F. App'x 14, 15 (4th Cir. 2008) (finding that the district court properly considered documents attached to the complaint in determining the applicability of an affirmative defense on a 12(c) motion). Because the documents necessary to determine whether AXIS has a duty to defend are attached to the Complaint, the instant action presents the rare circumstances in which facts sufficient to rule on AXIS's affirmative defense are part of the Complaint. *See Goodman*, 494 F.3d at 464. Therefore, this Court may reach the affirmative defense on AXIS's motion to dismiss.

## III. Discussion[3]

Having determined that it is appropriate to address AXIS's affirmative defense at the motion to dismiss stage, I turn to the policy itself to compare its terms to the claims in the underlying complaint. In interpreting an insurance policy under Maryland law, "the primary principle of construction is to apply the terms of the insurance contract itself." *Kendall v. Nationwide Ins. Co.*, 702 A.2d 767, 771 (Md. 1997) (internal quotation omitted). As explained by the Fourth Circuit,

> generally, Maryland law does not compel a court to ignore an insurance policy's plain language and ordinary meaning. Quite the contrary, Maryland's highest court has repeatedly noted that 'in the interpretation of the meaning of an insurance contract,' it 'accord[s] a word its usual, ordinary and accepted meaning unless there is evidence that the parties intended to employ it in a special or technical sense.'

*Assicurazioni Generali v. Neil*, 160 F.3d 997, 1001 (4th Cir. 1998) (internal quotation and citation omitted).

---

[3] As an initial matter, I must determine which state's substantive law applies in interpreting AXIS's insurance policy. AXIS takes no position on choice of law in its motion to dismiss, contending that under either Maryland or District of Columbia law the policy's Independent Contractor Exclusion bars coverage. (Mot. to Dismiss 6 n.3.) Cato correctly asserts that Maryland law applies to this action. (*See* Opp'n 3.)

   In federal diversity actions, a court applies the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005). Maryland adheres to the rule of *lex loci contractus*, under which the construction of a contract is determined by the law of the state where the contract was made. *Cont'l Cas. Co. v. Kemper Ins. Co.*, 920 A.2d 66, 69 (Md. Ct. Spec. App. 2007). A contract is generally deemed to be "made" in the state where the "last act necessary" to form the contract took place. *Rouse Co. v. Fed. Ins. Co.*, 991 F. Supp. 460, 462 (D. Md. 1998). Normally, "[t]he *locus contractu* of an insurance policy is the state in which the policy is delivered and the premiums are paid." *Aetna Casualty & Sur. Co. v. Souras*, 552 A.2d 908, 911 (1989). The AXIS policy was delivered in Maryland and the premiums were paid in Maryland. (Compl. ¶¶ 18-19.) Therefore, Maryland law applies.

AXIS relies on the policy's "Independent Contractor Exclusion" in moving this Court to dismiss Cato's claims against it. The exclusion provides that AXIS has no duty to defend or indemnify claims made by

> any **Supplier of Matter** when the **Claim** arises directly or indirectly from or involves in any way disputes over the ownership of, fees associated with, use of or exercise of rights in the **Matter**, material or services supplied or received.

(Compl., Ex. B at 15 (emphasis in original).) The policy defines "Supplier of Matter" as

> any party, or the successor assignee of any party, who has supplied, is supplying or is to supply **Matter**, material or services to the **Insured**, including any independent contractor or any present, former or prospective employee, partner, joint venturer, co-venturer, officer or director of the **Insured.**

(*Id.*, Ex. B at 15 (emphasis in original).) Matter is defined in the policy as

> communicative or informational content regardless of the nature or form of such content, including content disseminated electronically and/or digitally when authorized or controlled by the **Insured** (e.g. via websites, chat rooms, bulletin boards, databases and blogs).

(*Id.*, Ex. B at 5 (emphasis in original).)

Under Maryland law, "an insurer has a duty to defend its insured if there is a potentiality that the claim may be covered by the policy; that obligation is ordinarily determined by the allegations in the underlying tort action." *Sullins v. Allstate Ins. Co.*, 667 A.2d 617, 619-20 (Md. 1995). The duty to defend does not arise unless those allegations state a legal claim that is within the coverage of the policy. *Beretta, U.S.A., Corp. v. Federal Ins. Co.*, 117 F. Supp. 2d 489, 493 (D. Md. 2000) (citing *Reames v. State Farm Fire & Cas. Ins.*, 683 A.2d 179, 186 (Md. App. 1996)), *aff'd* 17 F. App'x 250 (4th Cir. 2001). In the underlying action, Mr. Hijazi alleged that after Cato terminated its business relationship with Mr. Hijazi, an independent contractor, in 2008, Cato unlawfully took ownership of and exercised rights in certain intellectual property and

proprietary matter, including the Lamp of Liberty website, which belonged to Mr. Hijazi. (*See* Compl., Ex. C).

Specifically, in Counts I, II, and III, Mr. Hijazi claimed Cato committed trademark and copyright violations by reproducing copyrighted web content from the Lamp of Liberty website, as well as misappropriating the Lamp of Liberty name and website. (*See id.*, Ex. C ¶¶ 28-50.) Count IV alleged that Cato committed trespass by entering the Lamp of Liberty website and modifying content without authorization. (*See id.*, Ex. C ¶¶ 51-54.) In Count V, Mr. Hijazi claimed that Cato was unjustly enriched by its use of Mr. Hijazi's intellectual property and other proprietary information that appeared on the website. (*See id.*, Ex. C ¶¶ 55-58.) Counts VI and VII asserted that Cato tortiously interfered with Mr. Hijazi's business relationships and contracts with a Jordanian website hosting company, Media Plus, and other Jordanian publishers by obtaining, without permission or compensation, the website and Mr. Hijazi's original works of authorship and representing to the publishers that Cato owned the Lamp of Liberty website, causing these publishers to breach their contracts with Mr. Hijazi. (*See id.*, Ex. C ¶¶ 59-72.) Count VIII alleged conversion resulting from Cato's misrepresentation that it owned the website, through which it gained administrative access to the site and then blocked Mr. Hijazi's access. (*See id.*, Ex. C ¶¶ 73-77.) Finally, Count IX asserted that Cato misappropriated trade secrets by refusing to return to Mr. Hijazi his media contact list, which was maintained through his email account at Cato. (*See id.*, Ex. C ¶¶ 78-83.)

AXIS argues that the Independent Contractors Exclusion bars coverage for the underlying action. Comparing the terms of the policy exclusion and the claims in the underlying complaint, I agree. The exclusion is unambiguous and bars coverage because the underlying claims were made by a "Supplier of Matter," Mr. Hijazi, and "arise[] directly or indirectly from

or involve[] in any way disputes over the ownership of, . . . use of or exercise of rights in the Matter." (*See id.*, Ex. B at 15.)

The policy defines "Supplier of Matter" to include "independent contractors." (*Id.*, Ex. B at 15.) The underlying complaint identifies Mr. Hijazi as such an "independent contractor" (*see id.*, Ex. C ¶ 10 ("[I]n or about April 15, 2006, the Cato Institute commenced using the services of Mr. Hijazi and his Lamp of Liberty as independent contractors.")), and Cato does not dispute Mr. Hijazi's independent contractor status. The underlying complaint contains allegations regarding the Lamp of Liberty website, its content, and the media contact list, all of which constitute "Matter" under the policy, which defines "Matter" as "communicative or informational content regardless of the nature or form of such content," and includes "content disseminated electronically and/or digitally." (*Id.*, Ex. B at 5.)

The phrase "arising out of" has been broadly interpreted under Maryland law. "The Court of Appeals has explained that 'the words 'arising out of' must be afforded their common understanding, namely, to mean originating from, growing out of, flowing from, or the like.'" *Beretta, U.S.A., Corp.*, 117 F. Supp. 2d at 493-94 (quoting *Northern Assurance Co. v. EDP Floors, Inc.*, 533 A.2d 682, 688 (Md. 1987)). Significantly, "the phrase 'arising out of' implies only 'but for' causation, rather than proximate or even some 'intermediate' form of causation." *Id.* at 494 (citation omitted). The allegations in the underlying complaint would not have arisen but for a dispute over the ownership of, use of, or exercise of rights in the matter generated by Mr. Hijazi, who had an independent contractor relationship with Cato. Put differently, all nine counts of the underlying complaint originate or grow, directly or indirectly, from a dispute with Mr. Hijazi, an independent contractor, over Cato's use of or exercise of rights in the website, content on the website, or the media contact list.

8

Cato's arguments to the contrary are unavailing. Cato claims that "the ambiguous nature of the exclusion would require discovery as to the parties' intent, as well as the exclusion's drafting history. For this reason alone, Axis' motion to dismiss must fail." (Opp'n 7.) Cato provides no further support for its suggestion that the policy exclusion is ambiguous. Contrary to Cato's argument, Maryland courts have recognized that "arising out of" language in insurance contracts is unambiguous. *See EDP Floors, Inc.*, 533 A.2d 682, 689 (Md. 1987); *Insights Trading Group, LLC v. Fed. Ins. Co.*, 2010 U.S. Dist. LEXIS 67271, at *13 (D. Md. July 7, 2010) (quoting *EDP Floors*). Only if a policy is ambiguous should the court consider extrinsic and parol evidence to determine the intention of the parties. *Beretta, U.S.A., Corp.*, 117 F. Supp. 2d at 493. Because the policy exclusion is unambiguous, Cato's request for discovery as to the parties' intent and the drafting history is denied.

Cato argues further that, consistent with Maryland law concerning the duty to defend, the "potential" exists that at least some causes of action set forth in the underlying complaint did not "arise[] directly or indirectly from or involve[] in any way disputes over the ownership of, fees associated with, use of or exercise of rights in the matter, material or service supplied or received." (Opp'n 7.) In particular, Cato asserts that Counts VI and VII of the underlying complaint, which alleged tortious interference with business opportunity and contract, create the "potential" for a finding that these claims are covered by the AXIS policy. (*Id.* at 7-8.) Yet, in making this argument, Cato selects language from Count VI of the underlying complaint: "Cato 'interfered with the Plaintiff's Agreement with Media Plus, and the future business relationship of the parties . . . .'" (*Id.* at 8 (quoting Compl., Ex. C ¶ 63)), but omits the language that immediately follows: "by, among other things, obtaining, without permission or compensation,

9

Mr. Hijazi and Lamp of Liberty's website and original works of authorship . . . ." (Compl., Ex. C ¶ 63.)

Cato provides similarly incomplete language from Count VII in its Opposition, stating that the underlying complaint "further alleges that Cato 'interfered with the agreements between Plaintiff and third parties . . . .'" (Opp'n 8 (quoting Compl., Ex. C ¶ 69).) Again, Cato omits the language that immediately follows, which explains the way in which Cato interfered with those agreements: "by, among other things, obtaining, without permission or compensation, Plaintiff's proprietary website and original works of authorship and using such information to place articles, papers, and other information on Defendants' own website . . . ." (Compl., Ex. C ¶ 69.)

The claims contained in both Counts VI and VII clearly arise out of a dispute over the ownership of, use of, or exercise of rights in the information generated from, and services provided in, the independent contractor relationship between Cato and Mr. Hijazi. Accordingly, despite Cato's arguments to the contrary, Counts VI and VII, like all the counts contained within the underlying complaint, fall within the policy's Independent Contractor Exclusion. As such, AXIS had no duty to defend Cato in the underlying lawsuit. *See Beretta, U.S.A., Corp.*, 117 F. Supp. 2d at 493 ("The duty to defend does not arise unless th[e] allegations [in the underlying complaint] state a legal claim that is within the coverage of the policy." (citation omitted)).

The duty to defend is broad in Maryland, but it is not implicated here. The AXIS policy exclusion is unambiguous and clearly encompasses the claims in the underlying action. Accordingly, no potential exists that the underlying claims are covered by the policy and any potential rejoinder Cato may have to AXIS's affirmative defense is foreclosed. AXIS's motion to dismiss is therefore granted.

A separate order is being entered herewith.

August 16, 2011 /s/
Date J. Frederick Motz
United States District Judge